A07A0470. MARCHANT v. TRAVELERS INDEMNITY COMPANY
OF ILLINOIS et al.
(650 SE2d 316)

BARNES, Chief Judge.

Insured Henry Marchant, doing business as the Marchant Group, appeals the grant of summary judgment to Travelers Property Cas-

ualty Company (hereinafter "Travelers").[1] The superior court found that Marchant made a misrepresentation on his application for insurance which was material to Travelers' acceptance of the risk and which, therefore, barred his insurance coverage. Travelers had brought a declaratory judgment action asking the trial court to declare that the two insurance policies it issued to Marchant did not provide defense and indemnity for a construction defect claim asserted in a separate lawsuit against Marchant because he had misrepresented the true nature of business, and a construction defect did not constitute an "occurrence" under the policy. Marchant appeals, contending that (1) the trial court erred in finding that a questionnaire was the equivalent of an application; (2) the trial court erred in finding that the questionnaire nullified coverage under a policy which existed before the questionnaire; and (3) there was a factual issue for a jury's determination as to whether there was a misrepresentation in the questionnaire. Upon our review, we affirm.

1. We note at the outset that appellant's brief violates Court of Appeals Rule 25. The brief does not contain a statement of facts or separate argument sections, as required by Rule 25 (a) (1) and (c) (1), but simply contains a single section entitled "Argument and Citation of Authority." Moreover, although appellant's brief enumerates three separate errors, it does not separate these arguments into distinct categories; instead, Marchant has combined all of his arguments and has followed no particular sequence in presenting his case. Rule 25 (c) (1) mandates that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." As we have held,

> Rule [25] (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [the appellant has] hindered the Court's review of [his] assertions and [has] risked the possibility that certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations.

(Punctuation omitted.) *Brown v. Cooper*, 237 Ga. App. 348 (514 SE2d 857) (1999).

---

[1] Also known as Travelers Indemnity Company of Illinois and the Travelers Indemnity Company of Connecticut.

2. A grant of a motion for summary judgment is proper when there is no issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). This Court applies a de novo standard of review to a grant of summary judgment, and the evidence must be viewed in the light most favorable to the nonmoving party. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Marchant was originally insured by Harleysville Insurance Company from June 16, 1994 until June 16, 2000 when the account "rolled over," or was transferred, to Travelers. Marchant represented on the Harleysville policy that his business operation consisted of "carpentry, *interior trim-new construction*." The sales representative who underwrote the Travelers policies for Marchant averred that "[b]ecause the first [Travelers] policy was issued on a 'roll over' basis, it was issued based on Harleysville's files which showed that the Marchant Group had represented that its business was carpentry and interior trim." The policy period was from June 16, 2000 until June 16, 2001.

Previously, at some point in early 1995, Marchant had acquired a custom home builders license and started to work as a general contractor for the construction of high-end custom homes on Brays Island, South Carolina. Marchant had never constructed new homes before this period. He obtained and supervised the subcontractors, and the homeowners paid him $4,000 weekly plus five percent of the total cost of the job.

In May 2000, Marchant entered into a contract to build a custom home on Brays Island for James and Janice Pringle. As noted above, the Travelers policy went into effect on June 16, 2000. In early 2001, Travelers sent Marchant renewal forms for the coming year. Marchant indicated that there had been no change in the nature of his business. The Travelers policy was again renewed for the period of June 16, 2001 until June 16, 2002. A June 2001 audit revealed that Marchant's business operations included general contracting rather than just carpentry, and Travelers terminated the policy in August 2001. In her affidavit, the underwriter indicated that either the policy would not have been issued had the true nature of Marchant's business been known, or the premium would have been higher "in accordance with the Marchant Group's actual risk exposure." She also stated that the underwriting division was not authorized to issue insurance policies to general contractors because of their high risk exposure.

Marchant finished the Pringle home in April 2001, and in August 2002, the couple sued Marchant in connection with the construction of their home. They sought recovery for numerous alleged defects to the house, as well as breach of express and implied warranties and alleged overcharges. Travelers defended under a reservation of rights

and initiated the underlying action for a determination of its obligations under the insurance policies.

In granting Travelers' motion for summary judgment, the trial court found that

> [Travelers has] successfully shown that [Marchant's] nature of business did in fact change from carpenter to contractor. In [Marchant's] initial application, [he] indicated that he was a carpenter. However, when asked by [Travelers] in renewal questionnaires if there had been any changes in [Marchant's] business operations, [he] responded "No." It was not until a physical audit was conducted that [Travelers] learned of [Marchant's] increased insurance risk.

Marchant contends that summary judgment was improperly granted because the trial court based its decision on OCGA § 33-24-7, which only applies to applications, and the renewal form he filled out in 2001 was not an application within the meaning of that Code section. Marchant also argues that the job classification he indicated in his 1994 application — "carpentry, interior trim-new construction" — was subject to interpretation and, at a minimum, its meaning is a question of fact for the jury. We do not agree.

Pretermitting whether the renewal form is an application within the meaning of OCGA § 33-24-7, Marchant's argument fails. "Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true." *Farmers &c. Ins. Co. v. Weaver*, 44 Ga. App. 752, 753 (162 SE 839) (1932). Thus, facts contained in renewal questionnaires fall within these representations as they are used to ascertain and calculate the risk associated with coverage. The fact remains that when he filled out the insurance application with Harleysville Insurance Company on June 16, 1994, Marchant represented that his business operation consisted of "carpentry, *interior trim-new construction*." By his own testimony, Marchant was only doing carpentry and trim work for new construction at that time, and not general contracting. He averred that he did not start the general contracting business until 1995. He also averred that he did not tell any insurance representative that the nature of his business changed or expanded. It is immaterial whether the misrepresentation happened during the initial application period, or the rollover period. It is material that the expanded nature of his business along with the attendant increased risks were misrepresented from 1995 until 2001 when the policy was cancelled.

OCGA § 33-24-7 (b) provides that

[m]isrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless: (1) [f]raudulent; (2) [m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) [t]he insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

"OCGA § 33-24-7 (b) . . . applies to 'incorrect statements' as well as to 'misrepresentations, omissions, (and) concealment of facts.' " *Oakes v. Blue Cross &c.*, 170 Ga. App. 335, 336-337 (1) (317 SE2d 315) (1984).

In determining whether the application contained misrepresentations, omissions, concealment of facts, or incorrect statements sufficient to prevent a recovery under the policy, it is immaterial whether [Marchant] acted in good faith in completing the application. In cases where the application for insurance is attached to and becomes a part of the policy, in order to avoid the policy for a misrepresentation of the applicant made in the application, the *insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk.* This is true although the applicant may have acted in good faith, not knowing that a representation is untrue.

(Citations and punctuation omitted.) *Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga. App. 3, 5 (413 SE2d 224) (1991).
There is no question that the risk associated with being a general contractor in the construction of high-end custom homes dramatically differs from those associated with carpentry and installing interior trim in new homes. Travelers' underwriter averred that

[t]he construction of high-end custom homes as a general contractor is considered a "high risk" activity in comparison to the operation of a "carpentry-interior trim" business in that the risk exposure of a general contractor is substantially higher than that of "carpentry-interior trim."

She further averred that because of the high risk involved in general contracting, the commercial accounts group that underwrote Marchant's policy was not authorized to offer policies to general contractors.

Because Travelers carried its burden of showing that the representation of Marchant's business was false and that it was material in that it changed the nature, extent, or character of the insurance coverage risk, the trial court did not err in granting summary judgment to Travelers in its declaratory judgment action.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 6, 2007.

*Royal & Vaughan, Jeffrey S. Vaughan*, for appellant.
*Weissman, Nowack, Curry & Wilson, Rahul Karnani, Steven D. Caley*, for appellees.